## Commonwealth v. Jowersky et al.

*Criminal law—Use of interpreter—Discretion of court.*

1. The use of an interpreter at a trial is a matter that lies exclusively within the discretion of the trial judge.

2. A defendant in a criminal case cannot, as a matter of right, demand the assistance of an interpreter.

3. If a judge has good grounds for believing that a witness can understand and speak English, he may properly refuse to appoint an interpreter.

4. The efficiency of cross-examination as a test of truth is greatly reduced by the use of an interpreter, and one will not be employed unless it is reasonably necessary to preserve the substantial rights of the defendant.

Indictment for violation of the Prohibition Enforcement Act. Motion for a new trial. Q. S. Montgomery Co., Sept. Sess., 1925, Nos. 33, 45 and 46.

*George Corson*, for Commonwealth.

*A. H. Hendricks* and *B. H. Leiterberger*, for defendants.

MILLER, P. J., Oct. 21, 1925.—The defendants appear to be Poles. Joskcy is the proprietor of a hotel at Stowe, in this county, and the others are his servants who assisted in waiting on its patrons. The place was raided by the state police; all three were held to answer for violating the Prohibition Enforcement Act, and, tried together, Pearl Jowersky and Jakinchuk were convicted of selling and furnishing, and Joskcy of possessing, unlawfully, intoxicating liquors for beverage purposes. The trial was not reported. Defendants now seek a new trial and unite in pressing but the single reason for it, that Pearl Jowersky, when she took the stand to testify on her own behalf and for the other defendants, was not allowed by the trial judge to do so through an interpreter. The fundamental error of their position seems to be that they conceive it to be the actual right of a defendant to demand that such be done, rather than that it is an administrative function, the exercise

of which rests in the sound discretion of the trial judge. In other words—if we understand their contention—it is that it is for the defendant, and not for the court, to say whether or not an interpreter shall be employed. The earnest oral argument of their counsel, even when supported by their carefully-prepared brief, has failed to convince us of the soundness of this contention.

Pearl Jowersky sat at defendants' counsel table throughout the trial, directly in front of and but a short distance from the trial judge. She was observed by him, while the five Commonwealth's witnesses and the other defendants were on the stand—six of them testified in English—frequently to indicate approval of, or dissent from, what they said, and to lean forward for comment to, or conference with, her counsel. Her attitude and manner indicated clearly that she comprehended, what was going on about her—that she *understood* the English language. The court interpreter was not asked to sit near her at any time, nor was it necessary to inform her of what was being said. When she took the stand she flatly refused to testify in English and her counsel asked for an interpreter. It remained for the trial judge, before acting on the request, only to ascertain if she could also *speak* English. He had already heard that she, as a waitress, had served the public in a Montgomery County hotel and knew, of course, that it was located in an English-speaking community. He asked her a number of questions in English, as did her counsel, but, although she answered a few in the same language, she generally stood mute and shook her head negatively. Her counsel urged her to make an effort to speak English, but she stolidly refused to do so. The trial judge then observed, seated in the court-room, the justice of the peace before whom she had had her hearing and who lives in the vicinity of the hotel in question. That gentleman was called to the end of the bench and there he was asked by the judge in the presence and hearing of defendants' counsel, but not in the hearing of the jury, what he knew about the ability of the woman to speak English. He stated that she had spoken broken, but easily understood, English at the hearing, which was conducted in that language. It was not even sought to be shown, except as indicated above, that the witness could not understand nor speak the English language. The request for an interpreter was thereupon refused. We have no record of our exact language in so ruling, but believe defendants' representation thereof from memory, found in their second supplemental reason, to be substantially correct, except that we have no recollection of having suggested a withdrawal of the witness from the stand if she persisted in her refusal to speak English.

This is, however, at least as we take it, a matter of no consequence, because, without suggestion from the court, that result would necessarily have followed. Defendants' motion that a juror be withdrawn and the cases continued was denied.

It is now urged that the foregoing constituted a deprivation of the defendants' constitutional right to be heard by themselves and their counsel. This, however, is not the question involved. That right is conceded. The use of an interpreter during the hearing of testimony is, however, a matter that lies exclusively within the discretion of the trial judge, and the real question here, therefore, is whether or not error was committed when this witness was not allowed to testify through an interpreter.

By those of experience in such matters, the use of an interpreter is frequently observed to be but a screen behind which the crafty mind of a witness seeks to hide while he prepares his answer. It makes for deliberation and foresight. The safe, but not always truthful, answer of the witness is

Commonwealth *v.* Jowersky et al.

carefully weighed during the slow process of propounding the question in English and its subsequent translation by the interpreter into the foreign language with which the witness professes to be familiar. The efficiency of cross-examination as a test of truth is greatly reduced by the use of an interpreter. Such use should not be encouraged and it should be limited to a jealous assurance of defendants' lawful and constitutional rights. It should not depend upon the fancy, the pleasure, the diffidence or the arbitrary demand of the witness himself, but should rest entirely upon a wise exercise of judicial discretion in passing upon his qualifications with reference to the use of the English language.

We are not satisfied that employment of an interpreter was reasonably necessary to preserve the substantial rights of the defendants. In fact, no effort was made by them, except by demonstration of the witness while she was on the stand, to show such necessity. We can see no merit in any of the reasons assigned.

And now, Oct. 21, 1925, the motions are overruled, the reasons are dismissed, a new trial is refused, and the defendants are ordered to appear in open court for sentence on Monday, Oct. 26, 1925, at 10 A. M.

From Aaron S. Swartz, Jr., Norristown, Pa.